# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FANTASTIC SAMS FRANCHISE CORP., | ) |
| Plaintiff, | ) |
| | ) No. 15 C 3008 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| PSTEVO, LLC and JEREMY BAKER, | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Fantastic Sams Franchise Corp. ("FSF")[1] brings this breach of contract action against Defendants PSTEVO, LLC ("PSTEVO") and Jeremy Baker (collectively, "Defendants"), seeking damages for PSTEVO's breach of two Salon License Agreements ("SLAs") with FSF and Baker's failure to honor his obligation to guarantee PSTEVO's debts to FSF. FSF moves for summary judgment [60] on these claims and on Defendants' counterclaims against FSF for breach of contract and unjust enrichment. Because FSF has established that it is entitled to summary judgment on all claims and counterclaims, and because Defendants have not filed any response to the motion for summary judgment, the Court grants FSF's motion for summary judgment.

---

[1] At the time the parties entered into the agreements at issue, FSF structured its franchise system in three tiers. FSF was the master franchisor and offered regional licenses to subfranchisors who in turn offered subfranchises to individual franchisees. In 2012, the subfranchisor for the Chicagoland area was Fantastic Sams Salons Corp ("Salons Corp"). In 2015, after this case was filed, Salons Corp and FSF merged, with FSF being the surviving entity and successor to Salons Corp. For simplicity, the Court uses FSF throughout this opinion, even though Salons Corp was the actual contracting entity at the time of the SLAs.

# BACKGROUND[2]

FSF is a franchisor of the Fantastic Sams Salons brand of haircare salons. FSF enters into SLAs with franchisees. In 2012 FSF entered into a Multi-Unit Development Agreement ("MUDA") and SLA with PSTEVO that granted PSTEVO a franchise to operate a Fantastic Sams Salon in Elgin, Illinois for a ten-year term. The SLA granted PSTEVO the right to use FSF's proprietary systems and marks in connection with the operation of the salon. In late 2013, FSF and PSTEVO entered into a second SLA, granting PSTEVO a franchise to open a salon in Algonquin, Illinois for a ten-year period.

Pursuant to both agreements, PSTEVO agreed to make weekly payments to FSF for licensing fees ("WLF") and national advertising fees ("NAF"). PSTEVO also agreed to purchase FSF branded products as well as other products FSF has established purchasing arrangements for. Baker personally guaranteed PSTEVO's obligations under both SLAs. At the time the parties entered into the SLAs, they agreed to abate all but $100 of the WLF for a term that was ultimately extended, through subsequent agreements, through January 26, 2017. Under the terms of the abatements, FSF continued to accrue the full WLF amount owed by PSTEVO, but agreed to ultimately waive collection of that amount if PSTEVO continued to comply with all terms of the SLAs.

At the end of January 2015, PSTEVO stopped paying its NAF. On February 20, 2015, FSF notified PSTEVO that its failure to pay the NAF is an act of default and afforded PSTEVO

---

[2] The facts in this section are taken from FSF's statement of material facts. Doc. 61. PSTEVO and Baker did not participate in the Court's summary judgment procedures, nor have they filed a statement admitting or disputing any of FSF's facts, as required by Local Rule 56.1(b)(3). The Court therefore treats FSF's facts as undisputed for the purposes of resolving this motion. N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) ("[D]istrict judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings.").

thirty days to cure their failure to pay. PSTEVO and Baker refused to cure the default. On April 10, 2015, Defendants closed the Algonquin, Illinois salon, and on April 18, 2015 they closed the Elgin, Illinois salon. FSF notified Defendants on May 1, 2015 that their abandonment of the salons terminated the SLAs. At the time Defendants closed the salons, FSF had abated $25,115 in WLF and Defendants had not paid $3,436 in NAF. Between the closing of the salons and the filing of FSF's summary judgment motion, an additional $72,223.78 in unpaid fees accrued. Furthermore, between the filing of the motion and the contractual end date of the SLAs, which were set to end on December 26, 2022 and October 30, 2023, Defendants would have to pay a total of $369,658.87. This figure is calculated using the average Consumer Price Index increase over the last ten years and reduces the total to their net present value using a discount rate of 3%. FSF seeks to recover all $470,433.65 of these unpaid fees as damages.

The agreements also state that if either party institutes a legal action to enforce its rights under the agreements, the prevailing party is entitled to recover its attorneys' fees, court costs, and other litigation expenses from the other party.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits, if any, that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use

the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Where a party does not respond to a motion for summary judgment, their failure to do so does not automatically entitle the moving party to judgment on its claims, as the Court must still ensure that the moving party is entitled to judgment as a matter of law. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

**ANALYSIS**

**I.      Breach of Contract Claims**

FSF moves for summary judgment on its breach of contract claims against PSTEVO and Baker. To succeed on a breach of contract claim in Illinois, a plaintiff must establish "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Ass'n Benefit Servs., Inc. v. Caremark Rx, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007) (citations omitted).

**A.      Breach of Contract Claim Against PSTEVO**

The elements of FSF's breach of contract claim against PSTEVO are undisputed. FSF and PSTEVO entered into a series of valid and enforceable contracts, specifically the SLAs granting PSTEVO franchising rights for the Algonquin and Elgin salons. These agreements were supported by valid consideration and contained definite and certain terms. Under the SLAs

PSTEVO was required to pay the WLF and NAF to FSF for the duration of the agreements. The agreements lasted for ten years from the opening of each franchise or eleven years from the date of the contract, whichever was earlier. The agreements also required, in the event of premature closure of the sale, PSTEVO to pay all weekly fees past due and to be due in the future during the full term of the SLA. In exchange, FSF granted PSTEVO the right to use FSF's mark and system. FSF also provided training, marketing and other business support. FSF provided these services and therefore satisfied its side of the bargain.

PSTEVO breached the contract when it stopped paying the NAF in February 2015. FSF provided PSTEVO with an opportunity to cure this deficiency, which PSTEVO did not take. FSF then further breached the agreement by closing both the Elgin and Algonquin salons.

Finally, as a result of PSTEVO's breach, FSF incurred damages in the form of the lost NAF and WLF. FSF's damages total $470,433.65 in unpaid fees. This total is the sum of $25,115 in WLF that FSF abated between the signing of the agreements and January 26, 2015, $3,436 in NAF that PSTEVO did not pay between February 2015 and April 2015, $72,223.78 in unpaid fees accrued between the closing of the salons and the filing of FSF's summary judgment motion, and $369,658.87 in fees to become due between the filing of the motion and contractual end date of the SLAs, which were set to end on December 26, 2022 and October 30, 2023. The fees to become due are adjusted to their present value using the average Consumer Price Index increase over the last ten years and reduced to their net present value using a discount rate of 3%. "The discount rate [in determining the net present value of damages consisting of a lost future stream of income] should be based on the rate of interest that would be earned on the best and safest investments." *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 537, 103 S. Ct. 2541, 76 L. Ed. 2d 768 (1983) (internal quotation marks omitted). The term remaining on the SLAs as

of the filing of the motion for summary judgment was approximately six and seven years, respectively.  Ten-year government notes sold 2.250% at a recent auction, *see Treasury Auction Results*, https://www.treasurydirect.gov/instit/annceresult/press/preanre/2017/R_20170208_1.pdf (last visited Mar. 8, 2017), so the 3% discount rate FSF used to calculate net present value is not too low for six and seven year streams of future income, and in fact it may be high.  *See Nunn v. Witherell*, No. 12 C 3384, 2012 WL 4338889, at *3 (N.D. Ill. Sept. 20, 2012) (using interest rate for thirty-year treasury bonds to calculate discount rate for twenty-two-year future income stream).  Therefore, the Court will use the 3% rate requested by FSF.

Under Illinois law, contractual damages should place the non-breaching party in the same position he or she would have been in but for the breach, and should not provide the non-breaching party with a windfall recovery.  *Jones v. Hryn Dev., Inc.*, 778 N.E.2d 245, 249, 334 Ill. App. 3d 413, 268 Ill. Dec. 259 (2002).  Here, it is undisputed that FSF would have received the NAF and WLF for the duration of the agreement were it not for PSTEVO's breach.  Furthermore, there is no evidence that FSF is saving any money by not having PSTEVO continuing to operate its salons.  Therefore, the Court does not have any basis to offset the damages against any cost savings FSF may be experiencing.  Without a response to this motion from PSTEVO, the Court accepts as true that the asserted damages to FSF are not a windfall.  Therefore, the Court grants FSF's motion for summary judgment on its claim against PSTEVO.

### B. Breach of Guaranty Claim Against Baker

At the same time FSF entered into the SLAs with PSTEVO, Baker personally guaranteed, in writing, all of PSTEVO's obligations under the SLAs.  As discussed above, FSF has fully performed under the agreement and PSTEVO owes the entirety of the NAF and WLF due under the agreements.  PSTEVO has to date failed to make payments on its obligations to

FSF, therefore Baker is obligated to satisfy PSTEVO's debts under the agreements to FSF. These debts now stand at $470,433.65. The Court therefore grants FSF's motion for summary judgment on its claim against Baker.

### C. Attorneys' Fees

The SLAs provide that if either party institutes a legal action to enforce its rights under the agreements, the prevailing party is entitled to recover its attorneys' fees, court costs and other litigation expenses from the other party. Because FSF is the prevailing party in this matter, it is entitled to reasonable costs and attorneys' fees under the agreement. FSF should submit a motion for these fees.

## II. Counter claims

### A. Breach of Contract Claim

Defendants allege that FSF breached the SLAs by preventing PSTEVO from conducting its own local advertising and that FSF prevented PSTEVO from using its weekly NAF to conduct local advertising in violation of the SLAs. Neither of these claims is supported by the record. First, the record shows that FSF did not prevent PSTEVO from conducting additional local advertising, and in fact encouraged it. This alone defeats the first claim.

Second, there is no provision in the agreements that would allow or require FSF to exempt PSTEVO from paying its NAF and allow it to instead direct that money at its own, local advertising. Without a duty imposed by the agreements, there can be no breach. *See W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967, 351 Ill. App. 3d 752, 286 Ill. Dec. 734 (2004) ("Only a duty imposed by the terms of a contract can give rise to a breach."). Furthermore, to the extent PSTEVO bases its claim on the language of the NAF policy statement, that allows the NAF Board to approve individual franchise owners to spend the NAF

7

on local media where that franchise owner is the only one operating in the designated market area, this claim also fails. That NAF Policy Statement is not part of the agreements and furthermore, PSTEVO was not the only FSF salon operator in its designated marketing area. Even if the NAF Policy Statement was binding, this provision would be inapplicable here.

Defendants also allege that FSF breached the SLA because it failed "(e) to maintain and enhance the reputation and trade demand of the Fantastic Sams System; (f) to preserve and increase the goodwill inherent in the Marks; and (h) to seek enforcement of all covenants, terms and conditions of the license agreements of all Licensees," Doc. 24 ¶18, in violation of Section 6 of the SLA. Even if these vague commitments to maintain and enhance the brand were enforceable, there is no evidence in the record to show that FSF failed to do so. Without a response from PSTEVO, the Court takes as true FSF's assertions that it complied with these vague statements, and grants summary judgment in FSF's favor on the breach of contract claim.

### B. Unjust Enrichment

Defendants also bring a claim for unjust enrichment. However, because the relationship between the parties is governed by the SLAs and the dispute arises out of those agreements, PSTEVO cannot seek redress under an unjust enrichment theory. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 594 F. Supp. 2d 945, 980 (N.D. Ill. 2009), *aff'd*, 629 F.3d 697 (7th Cir. 2011) ("'[W]here there is a specific contract that governs the relationship of the parties,' a plaintiff cannot assert a claim for unjust enrichment." (quoting *Stathis v. Geldermann, Inc.*, 692 N.E.2d 798, 812, 295 Ill. App. 3d 844, 229 Ill. Dec. 809 (1998)). Therefore, the Court grants FSF's motion for summary judgment on the unjust enrichment claim.

**CONCLUSION**

For the foregoing reasons the Court grants FSF's motion for summary judgment [60]. The Court enters judgment in FSF's favor on it breach of contract claims against PSTEVO and Baker. The Defendants are jointly and severally liable to FSF for the full amount of $470,433.65. Additionally, FSF, as the prevailing party, may file a motion seeking reasonable costs and attorneys' fees.

The Court also grants summary judgment in favor of FSF as counterclaim-defendant and enters judgment in FSF's favor on Defendants' breach of contract and unjust enrichment claims.

Dated: March 22, 2017

_____
SARA L. ELLIS
United States District Judge